## Ralph C. Smith v. William Humphrey, Auditor General et al.

*Statutes : Operate prospectively : Title : Tax Law of 1869.* A law will be construed to have a prospective operation only, unless the intent of the Legislature to the contrary plainly appears. In cases of doubt the title of the act may be resorted to in aid of its interpretation.

The rate of interest—thirty per cent—chargeable upon taxes remaining unpaid on the first day of June next after assessment, as provided by act No. 169 of the laws of 1869, does not apply to taxes levied upon lands assessed before the passage of that act. *Clark v. Hall, 19 Mich., 356.*

*Equity : Party seeking, must do : Decree.* An absolute decree perpetually enjoining a sale for unpaid taxes, because of a demand of interest by the proper authorities at a rate not allowed by law ;—the legal rate having been tendered and refused,—is not sustainable. The payment of interest, at the lawful rate, may be required upon the principle that a party seeking equity must do equity; and only on such payment, computed to the day of the tender, ought the sale to be perpetually enjoined. *Conway v Waverly, 15 Mich., 257, Palmer v Napoleon, 16 Mich., 176.*

*Heard May 7. Decided May 10.*

Appeal in Chancery from Wayne Circuit.

The bill in this cause was filed in the Circuit Court for the county of Wayne in Chancery, by Ralph C. Smith, against William Humphrey, Auditor General, and Paul Gies, Treasurer of Wayne County, and states that he is the owner of a parcel of land, situated in said county, on which in the year 1868 there was assessed as a tax upon said premises, the sum of $21,04, for school, township, county and state taxes; that said taxes not being paid, the premises were returned as delinquent therefor to the treasurer of said county, and by him to the Auditor General of said State; that said taxes remaining unpaid, the treasurer of said county, under the direction of said Auditor General, had advertised and given notice that said premises would be sold at the annual tax sales to be held at Detroit, in said County on the first Monday of October, 1869; that by virtue of the laws of this State at the time of the assessment of said tax and return of said premises as aforesaid, complainant was entitled to pay said tax by paying the amount thereof, with interest calculated thereon from the first day of February, 1869, at the rate of fifteen per cent. per annum, and office

charges, to the treasurer of said county, or to the State Treasurer, upon the certificate of the Auditor General, at any time prior to the first day of September, 1869.

The complainant further states that on the 16th day of August, 1869, he called upon the treasurer of said county at his office in Detroit, to pay said tax upon said land, and then and there offered to pay, and tendered to said County Treasurer, in lawful money of the United States, the sum of twenty-five dollars, being the full amount of said tax upon said lands, with interest thereon at the rate of fifteen per cent. per annum from the first day of February, 1869, to the day of such tender, and the legal office charges connected with said tax and premises, which amount he is still ready and willing, and offers to pay for the purpose of discharging said tax. But said County Treasurer refused to accept such amount so tendered in payment of said tax and said Auditor General and County Treasurer now demand and seek to collect the amount of said tax and interest at the rate of thirty per cent. per annum from the first day of February, 1869, together with the office charges and expenses of sale aforesaid, which amount said Auditor General and County Treasurer claim and insist is a lien upon said land, for the payment of which, said land is subject to sale under the tax laws of this State. And for the purpose of enforcing the payment of such demand, said Auditor General has advertised said land for sale by said County Treasurer, on the first Monday of October, 1869.

The bill provided for an injunction from selling said lands for or on account of said tax, and that said tax, together with the amount charged against said lands by said defendants for interest, office charges, and expenses of sale be declared to be set aside and cancelled, and said lands to be free from all lien on account thereof.

The defendants demurred to the bill, and the cause was heard in the Court below upon the demurrer.

The Court overruled the demurrer and decreed that the

tax be void upon the lands described and set forth in the bill, and that an injunction issue restraining the said defendants from selling or offering the lands for sale.

From this decree the defendants appeal to this Court.

*F. H. Canfield,* for Complainant.

I.—The law of 1869 was intended to act prospectively, and not retrospectively; and therefore has no application to taxes assessed and returned previous to its enactment.

The act in question does not amend any previous law, but is an entirely new statute, which, both in its title and context indicates an intention on the part of the Legislature, to establish a rule for " the assessment, collection and return of taxes for the future," is entitled, *" An act to provide for the uniform assessment of property, and for the collection and return of taxes thereon."* These words are entirely unambiguous, and they preclude the idea that the law was intended to have any retroactive effect whatever. The object of the law, as required by the Constitution, is expressed in the title, and all its sections must be construed so as to *carry out that object* and none other. The act, as the title indicates, provides for the assessment of taxes for the future; it also provides the means of enforcing the collection of taxes *so assessed,* and none other. These observations apply to the provisions of the act generally, but particularly to section 70, now under consideration. Sections 67, 68 and 69 set forth the manner in which delinquent lands *shall be* returned to the Auditor General, and evidently relate to future returns, because at the time the law took effect there were no delinquent lands in the state which had not already been returned. There was, therefore no subject upon which these sections could operate, until the assessment and return for the year 1869 should be made. And section 70 in express terms relates only to lands returned under *those sections.—Laws of 1869, p. 350. Clark v. Hall, 19*

*Mich.*, *356*, decided at the last October term of this Court. This decision though involving more especially §164, is also applicable to §70, now under consideration. The language of the Court in regard to the retrospective operations of the act, applies to the entire act, and pointedly sustains the position which we here assume.—*Price v. Mott, 52 Pa., 315 ; Harrison v. Metz ; 17 Mich., 377. Cooley's Const. Lim., 362– 370 ; 18 Johns., 139 ; 49 Barb. 196 ; 15 Wis. 548 ; 18 Mo; 599 ; Sedgwick's Const. L., 599 ; Blackwell on Tax Titles 480 ; Brown v. Veasie, 25 Maine 359; 5 La. 380.*

II.—A construction different from the one for which we contend, would render the law unconstitutional.

1. If the law relates to the collection of taxes assessed prior to its passage, then it embraces more than one object, and one which is not expressed in its title, and therefore contravenes Sec. 20 of Art. 4 of the Constitution. The construction of the title of the act has already been dwelt upon, and the opinion of this Court relating thereto cited. And we submit that the providing for a penalty upon delinquent taxes assessed in the past, can have no relation to, but is a matter wholly distinct in its nature from regulating "the assessment, collections, and return of taxes for the future."

2. By the express terms of the statute under which the taxes on the land in question were assessed and returned, the complainant had the right to pay the tax, by paying the amount thereof with interest at the rate of 15 per cent., and the office charges specified in that statute, at any time before September 1st, 1869. We insist that this right of the tax-payer cannot be abrogated or interfered with by any subsequent act of the Legislature. The following cases upon the right of the Legislature to interfere with the right of redemption from tax sales, are applicable to this point:— *Dikeman v. Dikeman, 11 Paige, 484; Bronson v. Howe, 13 Wis., 341; Adams v. Beale, 19 Iowa, 61.*

3. The construction of the act contended for by defendants, contravenes the constitutional provision in respect to uniformity of taxation.—*Scammon v. Chicago, 44 Ill., 269;* re-affirmed in *Clayton v. Chicago, 44 Ill., 280.*

III.—The rights of the State and tax-payer as they existed under the law of 1853, are not affected by the repealing section of the act of 1869. Such rights are expressly re-reserved by the proviso of said section. See § *167, Laws of 1869, p. 380.*

This section repeals the law of 1853, with its amendments and all other general tax laws of the State, previously existing: " Provided, *that the repeal of acts mentioned in this act shall not effect any act done, sale made, or right acquired or established previous to the time such repeal shall take effect.*" It has already been argued that under the law of '53 the complainant had acquired the right to discharge the lien of tax upon his lands in the manner and by the means provided by that law. Equally clear is it that under that law the State had acquired the *right* to enforce its lien for the tax by legal proceedings against the land. These rights are recognized and excepted from the effect of the repeal of the law of '53, by the proviso quoted. Not only does it appear from this proviso, affirmatively, that these rights and the mode of enforcing them are still to be regulated by the law under which they were acquired, but the import of the entire section negates the idea that the act '69 was intended to supersede previous laws in that respect.—*Bartruff v. Reiney, 15 Iowa, 257; Adams v. Beale, 19 Iowa, 61; Penn v. Clemans, 19 Iowa, 372; Meyers v. Copeland, 20 Iowa, 22,—* where the same statute was again under consideration and the decision in *Adams v. Beale* affirmed.

*Dwight May, Attorney General,* and *Geo. V. N. Lothrop,* for defendants.

I. What was the effect of the tax act of April 6th, 1869, upon the collection of taxes then delinquent ?

The complainant contends that it did not apply to them at all. On the other hand, we claim that it took up existing taxes where it found them, and furnished the machinery for all subsequent proceedings for collection and sale. This is the issue.

In *Clark v. Hall*, the Court held that the act was prospective and not retrospective. The question arose on an Auditor-General's tax deed, made on a tax sale of 1859, to which it was claimed the provisions of sec. 164 applied. The Court held that this section did not apply to such a deed at all. But we do not understand it at all as sustaining the complainant's position. On the most satisfactory grounds, it holds the operation of the act to be prospective; or, that it does not "relate back" to *antecedent* acts and change their character.

Of course retrospective acts are not, for that reason necessarily invalid; yet, retrospective effect will not be given to a law, except on the clearest expression of such intention. Now, no retrospective effect is claimed for this law. No such view is necessary to make it apply, for some purposes, to taxes previously assessed, but not yet collected. And in this respect the legislative intention is neither doubtful or obscure.

What we claim is this: That this law was designed to take up and bring within its operation the tax system of the State, *just where that was found*, at the date of its taking effect as law. It did not reach backwards, and operate on what had been done, but it took up the tax business and applied its own machinery to all operations from that moment. As to taxes already assessed, it took them up and furnished the machinery for their collection, sale and redemption. As to future taxes, it furnished all the machinery, from assessment forward. All this is clearly prospective. By the previous law delinquent taxes could be paid till sale by paying 15 per cent. interest from the first

day of February next after they were assessed.— *Comp. L.* §
*851.*—The act of 1869 shortened the term of this privilege
to the first of June, and if not paid till after that date,
imposed interest at the rate of 30 per cent. from said first
first day of February.—*Laws 1869, p. 350,* § *70.*

Now, that the Legislature intend this to apply to de-
linquent taxes already returned, as well as those thereafter
assessed, is, we think, incontrovertible. In some cases the
reference is in express terms to taxes assessed before the
law went into operation: in others, the application is
clear. See among others, sec. 75; the provisions for sale
of taxes, commencing with sec. 77; sec. 101, sec. 105, sec.
117.

Besides this, by sec. 167 the whole previously existing
tax system is repealed. There remained therefore, nothing
of the old machinery for the collection of existing taxes,
and unless the act of 1869 supplied new machinery, none
existed in the State. Not a dollar of the delinquent taxes;
could be collected, not a foot of land sold, not a tax
deed made. That the Legislature intended this, is out of the
question; that it is a *casus omissus* is not to be assumed;
and necessarily follows that the intent of the Legislature
was that the needful machinery should be supplied by
the act of 1869.

COOLEY, J.

The purpose of the bill in this cause was to restrain
the sale of certain lands belonging to complainant for the
state, county and township taxes assessed thereon for the
year 1868. The controversy relates to the interest which
was lawfully demandable upon these taxes.

The complainant insists that he is bound to pay at
the rate of 15 per cent. only; that being the rate fixed
by the law which was in force at the time the taxes were
assessed and returned. The Auditor General, on the other

hand, is of the opinion that the case comes within the provisions of the new tax law of 1869, which increased to 30 per cent. the rate of interest on delinquent taxes not paid before the first day of June next after their assessment, and which took effect before any offer was made to pay the taxes in question. The complainant, after the first day of June 1869, tendered payment of the amount of the taxes, with fifteen per cent. interest from the time fixed by law for their return, and this tender being refused, he filed this bill to perpetually enjoin a sale of the lands, and obtained a decree to that effect in the Court below. An appeal is now taken from that decree.

We do not understand it to be questioned that it was competent for the Legislature to make the general provisions of the act of 1869 apply to the taxes previously assessed and returned, so far as the subsequent proceedings to be taken by the State were concerned, if they had seen fit to do so. The question is whether they have expressed an intention to that effect. Unless that intention distinctly appears, the familiar rule of construction which presumes that legislation is designed to have prospective operation only, will require the Court to hold that the legislative purpose was that this act should apply only to the taxes subsequently assessed. For although to apply it to taxes previously levied would not, so far as the course of official proceeding for the enforcement thereof is concerned, be strictly retrospective in the proper sense of that term, yet so far as it increased penalties, or in any manner affected the tax payer's rights or interest as they depended upon previous acts or delinquencies, it would be plainly so, and the purpose of the legislation to give it that operation is not to be presumed, where the words are ambiguous or reasonably susceptible of a different construction.

In *Clark v. Hall, 19 Mich., 356*, we had occasion to say of the act in question, that we discovered it in no evidence that the intention of the Legislature was to give

it a retrospective effect; that on the contrary its design was to regulate the assessment, collection and return of taxes for the future, and the title as well as the body of the act aptly indicated that purpose. We have examined the act further with the aid of the learned counsel who argued the present case, and discovered no reason for changing the opinion previously expressed. The title is "An act to provide for a uniform assessment of property and for the collection and return of taxes thereon." As the Constitution requires the object of every act to be expressed in the title, it is reasonable to presume that the title has been chosen with some care, with the purpose to express with sufficient comprehension and accuracy the precise object had in view in the enactment. And although we do not think the title adopted ought to be criticised very closely, or applied narrowly when the general purpose of the act is fairly indicated, yet when the design of the Legislature in any of its provisions, is at all in doubt, the title will often prove not only the most satisfactory source of information on that subject, but may sometimes supply us with a solution which will be altogether conclusive.

If we examine this title, it will be very apparent that the only "assessment of property" it can refer to, is that which is to be made after it takes effect. It proposes to "*provide for* a uniform assessment of property;" and that means, to point out the steps that shall be taken, and the officers who shall take them, in order to make such an assessment. It looks to the future only; and it is obvious that it could do nothing else; for it could not *provide for* the making of an assessment which was already completed. But it also proposes to provide for "the collection and return of taxes *thereon.*" Now the word "thereon" as here employed clearly refers for its antecedent to the "assessment of property" which the act is to provide for; and the apparent purpose of the Legislature seems to be, so far as we can infer it from this title, to provide a system under which as-

sessments can be uniformly made thereafter, and taxes levied and collected upon *such* assessments.

Looking into the act itself we find that it proceeds to specify what property shall be subjected to taxation, and what exempt; at what time and how the assessment shall be made; the manner of equalizing and correcting the roll; the apportionment of the taxes and the spreading of the same upon the tax roll; the delivery of the roll to the collector; the proceedings to be taken by him in the collection, and what shall be done in case of his failure; how the time for collection may be extended, and how the taxes which remain uncollected shall be returned. These are successive steps in one proceeding, of which the assessment is the first and the foundation of all the rest; and before we reach the seventieth section we discover nothing from which any inference can fairly be drawn that it was designed the statute should have any retrospective effect, or should apply, even as to subsequent proceedings, to taxes levied before it went into operation. Indeed very few of its provisions could possibly have application to previous levies.

The seventieth section is as follows: "Any person may pay the taxes, or any one of the several taxes on any parcel of land returned as aforesaid, or on any undivided share thereof, with interest calculated thereon from the first day of February next after the same were assessed, at the rate of fifteen per cent. per annum, and the office charges, and four per cent. as a collection fee, to the treasurer of the of the county in which the lands are situated, at any time before they are sold for taxes, or to the State Treasurer on the certificate of the Auditor General, at any time before the twentieth day of September next preceding the time appointed for such sale: *Provided*, that on all taxes remaining unpaid on the first day of June next after the same were assessed, interest shall be computed at the rate of thirty per cent. per annum from the said first day of February."

Now the lands here referred to upon which the taxes may be increased by the addition of thirty per cent. interest are those "*returned as aforesaid*;" and we have already seen that those to be so returned are the lands upon which assessments have been made under this act. There is consequently no room for a construction which would make the thirty per cent. demandable upon taxes levied under previous laws, unless we pass by the plain and obvious meaning of the words here employed, and put upon them an interpretation which is not only forced and unnatural, but which finds no support in the title of the act.

We do not find ourselves called upon to look further into this act in order to determine whether other provisions may not have a retrospective operation. It is quite possible that as to some of them the purpose that they shall so operate may be very apparent. We did not intimate in the case of *Clark v. Hall*, nor do we say now, that none of the provisions of this act can be construed to apply to taxes previously assessed and returned, or that there would be any legal objection to so applying them. No such question is before us, and we confine our decision to the precise point here involved. We are of the opinion that the complainant had the right to discharge his taxes on payment of the amount thereof with fifteen per cent. interest; but we have nothing to say as to what would be the rights of the State in case of his neglect to make payment, or under what law any subsequent proceeding should be had.

It was urged on behalf of the defendants that if the view we have expressed be correct, the taxes assessed before the act of 1869 and then remaining uncollected, could not have been enforced, inasmuch as the last section of the act repealed all the previous tax laws. We think, however, that there is no such difficulty in the case as seems to be supposed. The repealing clause expressly provided that

the repeal of the previous acts should not affect "any act done, sale made, or right acquired or established" previous to the time when the act took effect. Now there had been "acts done" under which the State had unquestionably "acquired" a right to taxes then remaining unpaid, and to the interest or penalty payable thereon; and we see no reason to doubt that such right was protected and preserved by this saving clause. We are no more at liberty to suppose the State intended to surrender its own rights by the repeal of the previous laws, than that the purpose was to deprive individuals of rights previously vested. The taxes previously levied remained a lien upon the lands, and a sale might lawfully be made for their enforcement.

But although we think the Circuit Judge was right in his construction of the act of 1869, we do not understand the principle on which he enjoined the sale of the lands, without making it a condition that the complainant should pay the sum which was lawfully demandable, and which had been previously tendered. He who comes into equity for relief must be willing to do equity; and there can be no ground upon which, in enjoining an excessive claim, the complainant can be discharged from that which is justly due.—*Story Eq. Juris.* § *64, e,* § *707 ; 1 Spence Eq. Juris. 422.*—This is the rule even as between individuals; and there is at least equal reason for applying it in behalf of the State when it is seeking to collect its revenues. We have had occasion to apply it heretofore in suits to enjoin taxes.—*Conway v. Waverley, 15 Mich., 257 ; Palmer v. Napoleon, 16 Mich., 176.* See also *Hersey v. Supervisors of Milwaukee, 16 Wis., 185 ; Bond v. Kenosha, 17 Wis., 288.*

The decree of the Court below must be so modified as to perpetually enjoin a sale on the payment to the Auditor General within thirty days of the taxes assessed, including interest at the rate of fifteen per cent. per annum from the first day of February, 1869, to the time when the ten-

20 MICH.—Z².

der was made, together with the office charges. The complainant will be entitled to costs of the Court below, but neither party will recover costs in this Court.

The other Justices concurred.