### WEBSTER *v.* AUDITOR GENERAL.

1. Taxation — Interest on Delinquent Taxes — Retroactive Laws.

The amendment of section 59 of the tax law of 1893 by Act No. 262, Pub. Acts 1899, changing the rate of interest payable on delinquent taxes from 8 per cent. per annum to 1 per cent. per month, and increasing the charge for advertising from 70 cents to $1, applies to all taxes delinquent at the time of such amendment.

2. Same—Vested Rights.

One who owes delinquent taxes has no vested right to have the rate of interest thereon remain unchanged.

*Mandamus* by Simon G. Webster to compel Roscoe D. Dix, auditor general, to accept a certain sum as payment in full for certain taxes. Submitted October 24, 1899. Writ denied November 7, 1899.

*Horace M. Oren*, Attorney General, for relator.

*Russell C. Ostrander*, for respondent.

MOORE, J. This proceeding is to obtain a construction of certain provisions of the tax law. The facts shown by the record are that the relator owned certain real estate in Big Rapids, which, in the year 1897, was assessed to him,

the total of the taxes assessed being $2.63.    Failing to pay
the tax, the land was returned delinquent to the county
treasurer, and afterwards to the auditor general.    The
law (Act No. 206, Pub. Acts 1893) in force when the
land was assessed and the tax levied, in section 59, pro-
vides that any person may pay the taxes returned, with
interest computed from the 1st day of March next after
the same were assessed (in this case March, 1898), at the
rate of 8 per cent. per annum, with 4 per cent. as a collec-
tion fee; this section having also a proviso that, if the
taxes remain unpaid at the time of sale prescribed in the
act, an additional 70 cents shall be charged to cover the
cost of advertising and selling.    The time for sale under
the law of 1893, as amended in 1895, is the first Monday
in December.    The last legislature amended certain sec-
tions of the tax law, and, among them, section 59, just
referred to.    The time for sale of lands is fixed for the first
Tuesday in May.    Section 70.    The title to the act of 1893
reads:

"An act to provide for the assessment of property and
the levy [and collection] of taxes thereon, and for the col-
lection of taxes heretofore and hereafter levied; making
such taxes a lien on the lands taxed, establishing and con-
tinuing such lien, providing for the sale and conveyance
of lands delinquent for taxes, and for the inspection and
disposition of lands bid off to the State and not redeemed
or purchased; and to repeal act number two hundred of
the Public Acts of 1891, and all other acts and parts of
acts in anywise contravening any of the provisions of this
act."

Section 59 of the law of 1893 reads as follows:

"Any person may pay the taxes, or any one of the sev-
eral taxes, on any parcel or description of land returned
as aforesaid, or any undivided share thereof, with interest
computed thereon from the first day of March next after
the same were assessed at the rate of eight per cent. per
annum, and office charges, with four per cent. as a collec-
tion fee, to the county treasurer of the county in which
the lands are situated, at any time before they are sold:
*Provided*, that, on all descriptions of land on which any

of the several taxes remain unpaid at the time prescribed for the sale of such delinquent tax lands, there shall be charged an additional seventy cents to cover the cost of advertising and selling the same."

In 1899 this section was amended to read as follows:

"Any person may pay the taxes, or any one of the several taxes, on any parcel or description of land returned as aforesaid, or on any undivided share thereof, with interest computed thereon from the first day of March next after the same were assessed at the rate of one per cent. per month or fraction thereof, with four per cent. as a collection fee, to the county treasurer of the county in which the lands are situated, at any time before they are sold: *Provided*, that, on all descriptions of land on which any of the several taxes remain unpaid on the first day of October next preceding the time prescribed for the sale thereof, there shall be charged an additional one dollar for expenses, and which shall thereafter be a lien on said land, and, when collected, shall belong to the general fund of the State." Act No. 262, Pub. Acts 1899.

The amended section became law September 23, 1899. Relator, on the 2d day of October, 1899, applied to pay his tax. He tendered the original tax, the collection fee of 4 per cent., the dollar charge provided for in the section as amended, and interest at the rate of 8 per cent. per annum from March 1, 1898. The auditor general demanded interest at the rate of 1 per cent. per month or fraction thereof. The question, therefore, is whether or not the relator tendered a sufficient amount of interest, since, having tendered the one dollar for expenses, required by the amended section, he has, in effect, determined for himself that, while the enacting clause of the section referred to is not in force, the proviso thereto is in force. It is the claim of the relator that, if the construction of the statute which is contended for by the auditor general is to prevail, it will make the law retroactive, and that there is nothing in the law, as amended, indicating that the legislature intended it should be retroactive. In this connection our attention is called to *Smith* v. *Auditor General*, 20 Mich. 398.

The answer of the auditor general states, among other things:

"For a number of years last past, the expense to the State for collecting delinquent taxes has been greater than the sum received by the State for the interest and other charges which by law have been added to the original tax, so that the amount of the State tax levy has not been received, with the result that a considerable deficit exists and has existed, to supply a portion of which deficit the last legislature added to the State tax levy the sum of $450,000."

It is his claim that section 59, as amended, took the place of the section before it was amended, and to construe it prospectively only is to defeat the entire claim of the State for interest upon all delinquent taxes existing when the amendment took effect. He says the purpose of the legislature in making the change was to meet the cost of collecting taxes. Treated as retrospective legislation, it would accomplish the purpose the legislature had in view; it would violate no provision of the State Constitution or the Constitution of the United States; it would invade no vested right of an individual.

It is conceded courts are required to construe statutes as prospective, and not retrospective, unless constrained to the contrary course by the rigor of the phraseology of the statute itself. It becomes important, then, to determine, if we can, from the statute as it now reads, what was the purpose of the legislature in its enactment. The title of the original act stands as the title of the act as now amended. In *Smith* v. *Auditor General, supra,* it was said that the title of the act (Act No. 169, Laws 1869) made it very apparent that the provisions of the act related to the future. That construction, however, cannot be given to the title of this act. If any inference is to be drawn from the title of this act, it would be that its provisions related to the "taxes heretofore" as well as the taxes hereafter levied. As this, however, is not a new tax law, but is an amendment to an existing law, and, to

identify the section it was proposed to amend, it was neces-
sary to refer to the title of the act in which the section was
found, we do not think the title of the act affords much
light upon the purpose of the legislature in making the
amendment.

The provisions of the law of 1893, up to section 59,
remain substantially as they were prior to the amendment.
They relate to the assessment, levy, and collection of the
taxes, and to the return of the land for delinquent taxes.
All these things were to be done in substantially the same
way subsequent to the amendment as they had before.
There is no suggestion in section 59, as amended, that it
was to apply only to lands thereafter assessed and returned,
but it provides, not only as to those lands, but "on any
land returned as aforesaid," that any person may pay the
tax, with the interest and fees provided for in the amended
section.    Had the legislature intended the amended section
should apply only to future assessments, it would have
been easy to say so; but, as they have not done so, if we
are to construe the law according to its terms as it now
reads, it is difficult to come to any other conclusion than
that it was intended to apply to all lands upon which the
taxes had not been paid.    It is urged that, if this is the
construction to be given to the law, the law is invalid, as
interfering with vested rights.    It must be conceded that,
in relation to this construction, the rulings of the courts
are not harmonious.    It is claimed the case of *Smith* v.
*Auditor General*, 20 Mich. 398, sustains the position of
the relator.    As we have already seen, the court found
that, when the language of the act and the title of the act
were construed together, it became very apparent that the
provisions of the act related wholly to the future.    In that
case Justice COOLEY said:

"We do not understand it to be questioned that it was
competent for the legislature to make the general pro-·
visions of the act of 1869 apply to the taxes previously
assessed and returned, so far as the subsequent proceed-
ings to be taken by the State were concerned, if they had

seen fit to do so. The question is whether they have expressed an intention to that effect. Unless that intention distinctly appears, the familiar rule of construction which presumes that legislation is designed to have prospective operation only will require the court to hold that the legislative purpose was that this act should apply only to the taxes subsequently assessed. For, although to apply it to taxes previously levied would not, so far as the course of official proceeding for the enforcement thereof is concerned, be strictly retrospective, in the proper sense of that term, yet so far as it increased penalties, or in any manner affected the taxpayer's rights or interest as they depended upon previous acts or delinquencies, it would be plainly so, and the purpose of the legislation to give it that operation is not to be presumed where the words are ambiguous, or reasonably susceptible of a different construction."

In *People* v. *Saginaw County Treasurer*, 32 Mich. 260, it was held that the law of 1871 in relation to the redemption of lands sold for taxes was amended by the law of 1875, and —

"That the amended section took the place of and repealed the original one, and, being the only act in force providing for redemption, it must govern; that it must be assumed that such was the intention of the legislature, as the only alternative would be to infer an intention to cut off all right of redemption as to prior sales, which would not only be contrary to the uniform State policy in that regard, and therefore not to be deduced by slight inference, but it would affect injuriously the rights of those who before were entitled to redeem."

That case is on all fours with the present, except in that case the law of 1875 reduced the amount requisite to redeem, while in the present the law of 1899 increases it. That case must be held to rule this case, provided the legislature had the power to make the change. The latter question is ruled by *Muirhead* v. *Sands*, 111 Mich. 487. See, also, *Humphrey* v. *Auditor General*, 70 Mich. 292.

The relator urges that section 125 of the tax law of 1893 negatives the idea that the law is retroactive. It reads as follows:

121 MICH.—43.

"All rights which may have accrued to any person, as well as all rights which have accrued or become vested in any individual corporation, municipality, or the State, under any of the heretofore existing tax laws of the State which have been amended, modified, changed, or repealed, shall not be affected, changed, or destroyed, but the same shall remain in force, subject to review and enforcement in the courts of this State, and for the completion of all proceedings heretofore begun for the collection of taxes or the enforcement of all the requirements of such laws."

It was doubtless the purpose of this section to make the provisions of the law of 1893 prospective, rather than retroactive; but, in view of the fact that no mention was made in the title of the act of 1899 of this section, when section 59 of the law of 1893 was amended, and the further fact that section 125 was not re-enacted, it is difficult to see how it gives to the language used in section 59 any other meaning than would be drawn from the wording of the section itself.

It is the duty of the landowner to pay his taxes, and to pay them when they become due. Incidental to the power to tax is the power to enforce payment. Because the State has been liberal in making provision for the redemption of the lands from the lien created by the tax, it does not follow it cannot change the terms upon which the lands can be redeemed. See *Muirhead* v. *Sands*, 111 Mich. 487. We do not think it can be longer said in this State that the taxpayer has a vested right to have the interest charged in order to redeem remain at the same rate it was when the land was assessed, so long as he chooses to be delinquent in the payment of his taxes. It is, as we have shown, within the power of the legislature to change the rate of interest due from the relator and all others in his position. By the amendment to section 59 it has done so.

The auditor general properly construed the law. The application for the writ of *mandamus* is denied.

The other Justices concurred.