# Richmond.

Commonwealth and Another v. Camp Manufacturing Co.

January 14, 1909.

1. Taxation—*Standing Trees—Assessment in 1905—Act of March 17, 1906—Vansant v. Com'lth.*—A valid assessment for the taxation of trees, separate and apart from the land on which they stand, regularly made in 1905 by assessors appointed and acting under sections 441 and 472 of the Code, as amended by Acts 1889-90, p. 137, stands as the basis of taxation until the reassessment to be made in 1910, unless the legislature shall grant relief. The act of March 17, 1906, taking from commissioners of the revenue authority to assess standing timber trees separate and apart from the land did not affect the validity of a prior assessment regularly made by assessors. *Vansant v. Commonwealth*, 108 Va. 135 distinguished.

2. Constitutional Law—*Taxation—Standing Trees—Separate Assessment.*—The fact that the present Constitution requires the General Assembly to provide for the special and separate assessment of all coal and other mineral lands, and is silent as to any special assessment of standing timber, does not deprive the legislature of authority to make special assessments of standing timber. The legislature may authorize the assessment of standing trees as a part of the value of the land, or it may prescribe the method of valuation of land and the timber standing thereon separately, where the timber is owned by one person and the land by another.

Error to a judgment of the Circuit Court of Brunswick county on motions to be relieved from erroneous assessment of taxes. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Wm. A. Anderson, Attorney-General* and *E. P. Buford,* for the plaintiffs in error.

*Edward R. Turnbull, Jr.,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This writ of error brings under review two orders of the Circuit Court of Brunswick county, the one exonerating the defendant in error from the payment of taxes to the Commonwealth and levies to the county of Brunswick for the year 1906 upon standing merchantable timber trees, owned by the defendant in error, separate and apart from the surface of the land upon which they were standing; and the other exonerating the defendant in error from like taxes and levies upon standing merchantable timber trees for the year 1907.

These orders were predicated upon the view that there was no authority of law for the levy and collection of the taxes and levies in question upon standing merchantable timber trees, assessed separately from the surface of the land upon which they were growing, and to sustain that view the decision of this court in *Vansant, Kitchen & Co.* v. *Commonwealth,* 108 Va. 135, 60 S. E. 753, is greatly relied on.

In that case the opinion does say that, upon the passage of the act of March 17, 1906, all authority ceased to tax trees separate and apart from the land on which they stand; but it is not said that there was no authority for so taxing standing timber trees prior to the act just mentioned. On the contrary, what was said in the opinion had reference to the fact that by the act of March 17, 1906, the statutory authority for the assessment and taxation of standing timber trees by the commissioners of the revenue separate and apart from the land upon which they stand was repealed. The assessment called

in question in that case was made by the commissioner of the revenue without any authority appearing in the record.

The question, therefore, presented in the case before us is, whether the assessments and levies complained of here were made without authority of law.

Section 171 of the present Constitution provided for a re-assessment of real estate in the year 1905, and every fifth year thereafter; and section 172 required the General Assembly to provide for the special assessment of coal and mineral lands.

Now, when the assessments here complained of were made, sections 441 and 472 of the Code of 1887, as amended by the Act of 1889-90, p. 137, were in force and effect.

Section 441, prescribing the duties of assessors appointed under section 437 in accordance with the requirements of section 171 of the Constitution, is as follows:

"The assessors shall, immediately after their appointment, proceed to examine all the land and lots, with the improvements thereon, within their respective counties, districts, and corporations and shall, upon such examination, ascertain and assess the cash value thereof, and at the same time shall note whether the owner is white or colored. In performing such duties the assessors shall be governed by and comply with the provisions of section four hundred and seventy-two of the Code of Virginia as if the same by its terms were made specially applicable to them."

And section 472, as amended, is as follows: "If the surface of land is held by one person and the standing timber trees, minerals, mineral water, or oil under the surface be held in fee simple by another, the commissioner shall determine the relative value of each and shall assess the several owners with the value of their respective interests. If the surface and standing timber trees, minerals, mineral waters, or oil be owned by the same person the commissioner shall ascertain the value of the land, inclusive of the standing timber trees, minerals, mineral waters, or oil, and assess the same at such as-

certained value. The commissioner shall make the assessment under the provision of chapter twenty-three."

These two sections plainly provided for the separate assessment and taxation of standing timber, and remained in force, without effort to amend or repeal them until December 10, 1903, when the legislature made the attempt to amend chapter 23 of the Code of 1887, for the reassessment of real estate in accordance with the general and special provisions of sections 171 and 172 of the present Constitution; and, among other things, in the attempted amendment of section 441, the words, "in performing such duties the assessors shall be governed by, and comply with, the provisions of section 472 of the Code of Virginia, as if the same by its terms were made specially applicable to them," added by the amendment of 1889-90, were omitted; and by another act of December 10, 1903 (Acts 1902-3-4, p. 643), the attempt was made, among other things, to repeal section 472, which, as will be noted, was the section prescribing the duties of the assessors where the surface of land was owned by one person and the minerals, etc., and standing timber trees by another; but both of these acts of December 10, 1903, failed of their passage by reason of the fact that they did not receive the vote required by the Constitution. See *Whitlock* v. *Hawkins,* 105 Va. 242, 53 S. E. 401. The result was that sections 441 and 472, as amended by the act of 1889-90, *supra,* remained the law in this State until the timber involved in this case, as we shall presently see, had been regularly assessed in the year 1905 and subjected to taxation under section 447 of the Code on the basis of that assessment.

Conceding, therefore, for the purpose of this case, that the act of March 17, 1906, repealed section 472 of the Code as amended by the act of 1889-90, *supra,* still, if there is no other legislation invalidating assessments made under the former statute (and we have been pointed to none), such an assessment remains valid and enforceable.

In the answer filed on behalf of the Commonwealth and the county of Brunswick in this case, we find this statement: "That in the year 1905 the assessors appointed for the said county of Brunswick, in making the assessment of lands and lots within the said county, for the year 1905, as provided by law, determined the relative values of the lands on which the said timber trees were standing and of the said timber trees and assessed the several owners with the fair market value of their respective interests; that is to say, the said assessors assessed the owners of the said lands with the value of said lands exclusive of the said standing timber trees, and the said Camp Manufacturing Company with the value of said timber trees; and that the said timber trees, or the value thereof, are not otherwise assessed for taxation for State or county purposes." And we further find in the record the following agreed statement of facts signed by counsel for the respective parties to this controversy, to-wit: "It is agreed by the counsel for the parties hereto that the facts stated in the answer filed by the Commonwealth and the county of Brunswick are true, so far as they relate to the title of the Camp Manufacturing Company to the standing timber upon which the taxes mentioned in the notices of the motions have been assessed and levied; to the time and method by which the Camp Manufacturing Company became the owner of said standing timber; and to the separate listing, assessment and taxation of said timber from the surface of the land upon which the said timber is standing. In agreeing to the above facts, however, the counsel for the Camp Manufacturing Company does not admit any conclusion of law stated in said answer, but in so far as any conclusion of law is stated in said answer, he controverts the same."

Thus, we have a conceded state of facts, showing that while sections 441 and 472, as amended by the act of 1889-90, *supra,* were the law as to the duties of assessors, and authorized the separate assessment of standing trees, the assessment here in

question was regularly made in the year 1905; that is, the defendant in error was assessed with the value of its interest in the standing timber, while the owners of the surface of the land were assessed with the value of the land, and the value of this standing timber was not when the regular assessment was made in 1905, otherwise assessed for taxation for State or county purposes. This assessment became the basis of taxation in the county of Brunswick in 1906 and thereafter; and accordingly the taxes and levies here in question for the years 1906 and 1907 were levied, the assessment having been made by an assessor regularly appointed under section 171 of the Constitution, and the statute conforming thereto and remaining in force; while in the case of *Vansant, Kitchen & Co.* v. *Commonwealth, supra,* the assessment was made by the commissioner of the revenue, but when does not clearly appear, and the taxation called in question based thereon.

The assessment made in that case was without authority, for the commissioner of the revenue had no power to make any assessment of standing trees separate and apart from the land, and such authority was never conferred upon a commissioner of the revenue until the act of February 21, 1906, which was repealed by the act of March 17, 1906.

In that case it also did not appear whether the value of the timber was included in the assessment of the land, while in the case here, as we have seen, on the agreed facts the assessment of the defendant in error's standing trees, regularly made in 1905, must be treated as valid, otherwise its interest in this standing timber must escape all taxation for at least the years 1906 and 1907.

The language of the statute prescribing the duties of the assessors appointed to make the assessment in 1905, and which was in force when the assessment here complained of was made, provided that the assessor, in performing his duties, should be governed by and comply with the provisions of section 472 of the Code, the language of which is clear and explicit as to his

duties, namely: "If the surface of land is held by one person and the standing timber trees * * * be held in fee simple by another * * * (he) shall determine the relative value of each, and shall assess the several owners with the value of their respective interests."

The statutes in force in 1905, when the separate assessment of the timber in this case was made, were in their force and effect preserved by section 1 of the schedule of the Constitution, which provided that the common law and the statute law, so far as not repugnant thereto, or repealed thereby, should remain in force until they expired by their own limitation, or were altered or repealed by the General Assembly. The property of the defendant in error having been listed and assessed in 1905 pursuant to the statute then in force, we know of no principle upon which the assessment so made does not furnish the proper basis for taxation for 1906 and 1907.

No such question arose in the case of *Vansant, &c.* v. *Commonwealth, supra,* and while the opinion in that case correctly stated that upon the passage of the act of March 17, 1906, all authority ceased to tax trees separate and apart from the land upon which they stand, meaning upon an assessment made by a commissioner of the revenue, there is nothing whatever in the opinion having the effect to invalidate or discredit assessments of standing trees theretofore regularly made by authority of law, and the act of March 17, 1906, affected the method of assessing standing timber separate and apart from the land, even by the commissioners of the revenue, only prospectively, and did not affect the validity of an assessment regularly made in 1905 by assessors appointed and acting under sections 441 and 472 of the Code, as amended by the Acts of 1889-90, *supra.* There is nothing in the act itself evincing a purpose on the part of the legislature to invalidate any previous assessment; on the contrary, the real purpose of the act was to validate previous assessments. Not having evinced a purpose to invalidate prior assessments by the act of March 17, 1906, it

is needless to discuss the question, whether the legislature had the power, if it had so intended, to invalidate assessments so as to relieve timber owners from the payment of taxes for the five years next following 1905, and thereby create an exemption from taxation, in violation of the express provision of section 183 of the Constitution.

"But in general, when a tax system is revised, with a repeal of the former law, it is safe to assume that the legislative intent is that the new enactment shall be of prospective force only, and shall not disturb existing valid assessments." Cooley on Taxation (3rd ed.), pp. 21-22.

In support of this statement, the case of *Warren R. Co.* v. *Belvidere,* 35 N. J. L. 587, is cited, in which, speaking of a tax law which was repealed after the tax was laid, it was said: "Such repeal does not affect the tax assessed. That was a matter closed by the assessment, and besides has been concluded by final judgment since the repeal." In that case, the collection of the tax was provided for, not by the law which was repealed, but by a general law which remained in force.

The case of *State* v. *Waterville Savings Bank,* 68 Maine, 515, was also cited. In that case an assessment for which an action was given was held to remain collectible, notwithstanding the repeal of the statute under which it was laid. See also *Smith* v. *Auditor General,* 20 Mich. 398.

It is argued that to uphold the tax in this case, upon the record presented, would be to require standing timber trees in the county of Brunswick and one adjoining county to bear a burden of taxation when standing timber trees in other counties of the State would escape taxation.

We are unable to see the force of this contention. The hardship would come, as it would seem, upon the tax-payers of other counties whose lands have doubtless been assessed upon a valuation including the standing timber thereon, and are being regularly taxed year by year upon that assessment, while not so in the county of Brunswick; and if defendant in error could

be relieved of the taxes of which it here complains, it would escape taxation upon its valuable property in that county until another assessment thereof is made under authority of law.

Counsel for defendant in error further argues, that as the former Constitution did not expressly authorize it, and section 172 of the present Constitution requires the General Assembly to provide for the special and separate assessment of all coal and other mineral lands, and does not authorize a special assessment of standing timber, the conclusion is inevitable that the legislature had no constitutional authority to amend section 472 of the Code so as to authorize the separate assessment of standing timber; but we are unable to see the force of this contention. The provision of the Constitution which is referred to further provides that, until such special assessment is made, the land shall be assessed under general laws. The special assessment therein referred to and provided for does not necessarily exclude the assessment of standing trees as a part of the valuation of the land upon which they stand, and there can be no conceivable reason why the legislature may not, as it did by the amendment to section 472 of the Code, prescribe the method of the valuation of land and the standing timber thereon separately, where the timber was owned by one person and the land by another. We can see nothing in the present or former Constitution which inhibits the legislature from making such a provision.

When the legislature by its act, approved March 12, 1908—Acts 1908, p. 331—provided, as did the act of February 21, 1906, repealed by the act of March 17, 1906, for an assessment by the commissioners of the revenue of the several counties, at shorter intervals than five years, of standing merchantable timber trees separate and apart from the land upon which the trees are standing, where the timber trees are owned by one person and the surface of the land by another, it was not, as counsel for defendant in error contends, in recognition of the fact that there was no authority of law for such an assess-

ment, but was merely intended to change the agency of the State to make the assessment and the duration thereof as the basis of taxation.    There is not a word in that statute to indicate a purpose to invalidate an assessment made as in this case, and hence the statute has no bearing upon the question we are considering.

Upon the whole case, we are of opinion that, as the assessment complained of was validly made in 1905 and the assessment stands as the basis of taxation until the reassessment to be made the fifth year thereafter, namely, 1910, unless the legislature in the exercise of its power shall see fit to relieve the defendant in error and others similarly situated from taxation based upon that assessment, the judgment of the circuit court complained of is wrong and must, therefore, be reversed, and this court will enter such judgment as the circuit court should have entered, dismissing the petitions of the defendant in error, with costs to plaintiffs in error.

*Reversed.*