## No. 12,512.

## CRESCENT CITY RAILROAD CO. vs. BOARD OF ASSESSORS, ET AL.

### SYLLABUS.

(1.) In determining value of a corporate franchise, the earning capacity forms a *basis* of estimation. Sec. 28, Act No. 106, 1890.

(2.) But it is not *the* sole basis. Starting with the earning capacity as a basis, it is competent for the assessor to consider other matters having a bearing upon the value of the franchise, other facts and circumstances tending to augment such value on the one hand, or diminish it on the other.

(Three suits consolidated for purpose of trial and adjudication, and brought up in one transcript.)

ON APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*Farrar, Jonas, Kruttschnitt & Gurley* for Plaintiff and Appellant.

*F. C. Zacharie* for Board of Assessors and Tax Collectors, Defendants and Appellees.

*Samuel L. Gilmore,* City Attorney, and *J. J. McLoughlin,* Assistant City Attorney, for the City of New Orleans, Defendant and Appellee.

Argued and submitted June 19, 1897.
Opinion handed down December 13, 1897.
Rehearing granted June 29, 1898.
Opinion handed down February 6, 1899.

The opinion of the court was delivered by

BLANCHARD, J.   These cases present the question of the assessment of the street railway franchise of plaintiff company for the years 1894, 1895 and 1896.

A reduction of assessment for each year is demanded.

The *gravamen* of plaintiff's complaint is that the Board of Assessors did not assess its franchise at a valuation ascertained by its earning capacity, but adopted another and a different method of valuation, and thereby violated Section 28 of Act No. 106 of 1890.

There is no allegation of *relative* over-assessment, and none of discrimination to its prejudice in the assessment made of the franchises of other corporations as compared with the assessment of its own franchise, and testimony offered on behalf of the plaintiff to show such discrimination was objected to and properly ruled out.

The inquiry is, therefore, limited to the question of *actual* over-assessment as the result of an alleged erroneous method adopted for the ascertainment of the value of the franchise.

Defendants' evidence shows how the valuation adopted was arrived at.  Restated from the testimony it is as follows:

As to the year 1896, the Board of Assessors found the stock issue of plaintiff company to be two million dollars, upon which a dividend of six per cent. had been declared.  They found, further, an issue of fifty thousand dollars of six per cent. bonds, an issue of forty thousand dollars of six per cent. bonds, and an issue of three million of five per cent. bonds, upon all of which the interest had been paid.

These several amounts, figured to a basis of six per cent. earning capacity, they found aggregated a total of four million five hundred

and ninety thousand dollars as representing the value of the property. Plaintiff company had made a return to the Board of its tangible property, realty, rolling stock, road bed, etc., amounting to seven hundred and eighty-four thousand seven hundred and thirty-three dollars, which the Board accepted as correct. This property being assessed direct in the several taxing districts in which located, the Board deducted its value from the four million five hundred and ninety thousand dollars, above stated, and this left a net result of three million five hundred and nine thousand two hundred and sixty-seven dollars as the value of the franchise. Concluding, after discussion and consideration, that the property, under existing conditions, would hardly liquidate for that sum, it was decided to make the total assessment of the plaintiff company's property, corporeal and incorporeal, two millions of dollars. From this sum was deducted the value of its tangible property as aforesaid, seven hundred and eighty-four thousand seven hundred and thirty-three dollars, and this left one million two hundred and fifteen thousand two hundred and sixty-seven dollars as the assessable value of its franchise.

Accordingly, that sum was decided on as the proper valuation.

As to the years 1894 and 1895, the same method was adopted in reaching the valuation at which the franchise was assessed for those years. That valuation for 1894 was six hundred and forty-nine thousand six hundred and fifty dollars, and for 1895, one million four hundred and eight thousand and fifty dollars.

Plaintiff's contention is that the assessment of its franchise for 1894 should be reduced to one hundred and forty-nine thousand six hundred and fifty dollars, and to four hundred thousand dollars for each of the years 1895 and 1896.

This company's system of street railway aggregates fifty-one miles.

The company was organized in 1866, with franchise extending —— years from that date, and has acquired an extension of existing franchises, and new franchises, to run for fifty years from the expiration of its present charter.

In June, 1893, the capital stock of the company was increased to two million dollars, represented by twenty thousand shares of one hundred dollars each. Early in that year the New Orleans Traction Company, Limited, became a majority stockholder of the plaintiff company.

It holds sixteen thousand two hundred and forty-seven shares of the

total issue of twenty thousand shares. What is known as "the minority stock" represents three thousand seven hundred and fifty-three shares.

The official quotations of the New Orleans Stock Exchange show this stock to have had, in the latter part of 1894 and the early part of 1895, a market value of from eighty-five to ninety and one-half dollars per share of one hundred dollars, and of eighty dollars per share in the early part of 1896.

Semi-annual dividends of three per cent. upon the stock were declared for the years 1894, 1895 and 1896, and are guaranteed by the New Orleans Traction Company, Limited, for all the subsequent years to the expiration of the extended franchises of plaintiff company, and even beyond that to "any renewals thereof for additional periods that may hereafter be obtained."

Under this guaranty, should the earnings of the plaintiff company be insufficient, after payment of operating and other expenses, to pay a dividend of six per cent. *per annum,* the Traction Company supplies the funds to do so.

The quotations of the Stock Exchange further show that plaintiff company's issue of three millions of five per cent. gold bonds were worth in the market, in the latter part of 1894 and early part of 1895, from ninety-four and one-half to ninety-seven, and in the early part of 1896, from ninety-one and three-fourths to ninety-four.

The law declares that corporations shall be assessed directly upon all property owned by them. In making such assessments, "the sworn statement of condition made next preceding the date of listing shall be considered." This implies that such "sworn statement" is to be made and furnished by the officials of the corporation, and the act declares that a failure to do so shall subject them to penalties prescribed. Certain corporations, not required by law to make sworn statements of condition, are enjoined, under similar penalties, to furnish "a sworn statement of the cost of their property, real and personal, and of the value at which the same is carried on the books, and in determining the assessment these valuations shall be considered."

There is also required to be furnished "a sworn statement of the earning capacity of the corporation, which said earning capacity shall form *a basis* of estimating the value of its charter or franchise."

Section 28, Act No. 106 of 1890.

From this language it seems clear that the law maker did not intend a corporation's earning capacity to be the sole basis of estimating the value of its franchise.

The language used is "*a* basis," not *the* basis. Starting with the earning capacity as a basis, those whose duty it is to make assessments are expected to consider other matters having a bearing upon the value of a franchise, other facts and circumstances which may tend to augment such value on the one hand, or diminish it on the other.

This has heretofore been recognized by this court. In Crescent City Railroad Co. vs. City of New Orleans and Board of Assessors, 44th An. 1058, it was said:

"The earning capacity of property, without regard to its nature, is not always a criterion of value." And the court, in that case, further declared that while the statute directs the earning capacity to be taken as a basis, it does not exclude consideration of any other element of value it may possess.

Under the law, and this interpretation of it, it was competent for the Board of Assessors, in determining the value of plaintiff's franchise, to take into consideration and give proper weight to the facts and circumstances, hereinbefore mentioned, showing the condition and standing of this company.

The obligation of the Traction Company is not merely to supply funds to pay six per cent. dividend on certain minority stock; but to give to the whole issue of plaintiff company's stock the character and prestige which belong to shares upon which a certain dividend of six per cent. annually, for a long period, is assured. In other words, it guarantees six per cent. dividend upon the whole stock. It matters not by whom held. Wherever it is, it stands assured of this dividend. Atlantic Tel. Co. vs. Commonwealth, 66 Penn. St. 57.

It matters not where the money comes from, so that it is forthcoming, is demandable on the stock and the demand is met. Commonwealth vs. Pittsburg, etc., R. R. Co., 74 Penn. St. 83. This certainty of the dividend gives the shares their principal value, causes them to quote high on the stock market, and it is an indisputable fact that the one million six hundred and twenty-four thousand seven hundred dollars of this stock, held by the Traction Company, was worth in the market in the early part of 1896, in cash, eighty cents on the dollar, or one million two hundred and ninety-nine thousand seven hundred and sixty dollars, had that company chosen to dispose of it.

In its hands it must be considered to have had that value at that time. This stock does not lose its character or quality as dividend-paying stock merely because of the fact that it is in the hands of those who guarantee the dividend. The Traction Company saves the amount it might have to pay as dividends on the stock by owning the stock itself. It thus derives the benefit of a credit the equivalent of the dividends the stock would earn in other hands. This is compensation equal to payment of the dividends.

This guaranty of the Traction Company can not be regarded otherwise than as an additional source of revenue enjoyed by plaintiff company. Under the contract between the two companies, no matter what shortage there may be, the Traction Company makes it up. If the earnings of plaintiff company fall short of meeting the operating expenses and fixed charges of its railway system, the Traction Company is obligated, without charge, to supply the deficit, and, in addition, to supply the funds to meet the six per cent. dividend on the stock.

Such a contract auxiliary to plaintiff's charter greatly strengthens the latter, and gives to its franchise a value beyond what it would have if dependent alone upon its earning capacity. It is preposterous to say that this circumstance should not be taken into consideration in determining the value of this franchise.

This court said in Railroad Company vs. City, 44th An. 1055: "Revenue is an element of value not to be overlooked in assessing such property as that of plaintiff, even were the statute silent on the subject."

It can make no difference what the source of the revenue is. It is equally revenue whether derived from fares paid by passengers on the railroad, or whether derived from the Traction Company pursuant to the terms of an advantageous contract made with it by plaintiff company.

In State ex rel St. Charles Street Railroad Company vs. Board of Assessors, 48th Ann. 1157, this court approved the addition to the sum paid for dividends, of an amount annually set aside as a sinking fund and used to reduce the principal of a bonded debt—this act of the assessors resulting in largely increasing the assessment upon the franchise of the railroad company.

Accordingly, if plaintiff's earned revenue, in the instant case, is eked out by revenue from another reliable source, so that the two together

suffice to pay all expenses and charges and a six *per cent* dividend on the stock, can there be valid objection to the Board of Assessors considering this fortunate circumstance and giving effect to it in fixing the amount of plaintiff's assessment? Surely not. Rather was it their duty to do so.

This view renders it unnecessary to determine what expenses, charges, etc., should, and what should not, be deducted from gross earnings in order to ascertain the true net surplus earnings of a corporation, to the end of capitalizing that sum at six per cent as a basis of arriving at the value of its franchise.

It also renders it unnecessary to determine the question raised by the defence in this court as to how far, or to what extent the Traction Company has, by its contract with plaintiff company, relieved the latter of the payment of the cost, expenses and charges incidental to the operation of its trolley lines—the ratio of plaintiff's surplus revenue, liable to be capitalized as above, being in proportion to such relief.

And it likewise renders unnecessary a decision upon defendant's plea of estoppel based upon plaintiff's *declaration* of dividends of six *per cent* upon its stock.

In his answer to the suit for reduction of assessment for the year 1896, the attorney for the Tax Collector asks for judgment against plaintiff for ten *per cent* attorney's fees upon the aggregate amount of taxes and penalties to be collected, pursuant to Section 57 of the Act of 1890.

In the suits for reduction of assessments for the years 1894 and 1895, no such demand is made.

In the court below a motion to amend the judgment so as to include ten *per cent* attorneys' fees was overruled.

Counsel for defendant in their brief filed in this court ask that the judgment appealed from be amended so as to allow the attorney's fees.

This might be done so far as the suit on the assessment of 1896 is concerned, had a formal motion to that effect been filed in this court. But no such motion was filed.

Judgment affirmed.

NICHOLLS, C. J., takes no part on account of absence when case was argued.

## ON REHEARING.

BLANCHARD, J. A rehearing having been granted and a re-argument had, a further consideration of the case leads the court to a modification of its former decree. It is to the public interests that cases of this character be determined as speedily as possible, consistent with the ends of justice, and, accordingly, without remanding the case, thereby involving further delay and more expense, we will ourselves reduce the assessment of plaintiffs franchise for the years 1894, 1895 and 1896 to the sums we think, under the evidence in the record, will do substantial justice to the State and the tax-payer and end this vexatious and lengthened controversy.

On the basis of assessment adopted by the Board of Assessors, and the calculations made by them, they found three million, five hundred and nine thousand, two hundred and sixty-seven dollars, as the value of plaintiff company's franchise. But, after discussion and consideration, concluding that the property under existing conditions, would not liquidate for that sum, the Board decided to make the total assessment of plaintiff's property, corporeal and incorporeal, two millions of dollars. From this sum they deducted the value of its tangible property, seven hundred and eighty-four thousand, seven hundred and thirty-three dollars, and this left one million, two hundred and fifteen thousand, two hundred and sixty-seven dollars, as the assessed value of its franchise for 1896. We think this figure, in view of many circumstances unnecessary to recite, too high, and will reduce the assessment on the company's franchise to nine hundred thousand dollars for that year.

The assessment of the franchise for 1895 was, on the basis adopted by the Board, and in view of other considerations entering into their calculations, fixed at one million, four hundred and eight thousand and fifty dollars. We think this too large a sum and will reduce the same to seven hundred thousand dollars.

And so with the assessment of the franchise for 1894, which was fixed by the Board at six hundred and forty-nine thousand, six hundder and fifty dollars. This, in the modified view we take of the case, we think excessive and will reduce the same to three hundred thousand dollars.

These reductions are intended to apply only to the years named, and it is not contemplated that the Board of Assessors should be thereby

fettered in their judgment of the proper assessments to be placed upon plaintiff's property and franchise for subsequent years, with respect to which the considerations now impelling the court to the present reductions may not exist.

It is, therefore, ordered that the decree hereinbefore handed down be set aside, and it is now ordered, adjudged and decreed that the judgment appealed from be so amended as to reduce the assessment of plaintiff company's franchise for the year 1894 to three hundred thousand dollars, for the year 1895, to seven hundred thousand dollars, and for the year 1896 to nine hundred thousand dollars, and that as thus amended the judgment of the court a qua be affirmed, costs of appeal to be borne by appellees.

MILLER, J., dissents.