# STATE v. WESTERN UNION TELEGRAPH COMPANY.[1]

Nos. 16,239—(208[2], 3[3]).

January 7, 1910.

**Repeal of statute — construction of later act.**

A subsequent act of the legislature controls the provisions of a prior statute if it were intended to have that operation; but, where the intention of the legislature is apparent that the subsequent act shall not so operate, then, even though the words of such a statute, taken strictly and grammatically, would repeal such an act, it will not be given such a construction.

**Taxation of telegraph companies — Laws 1891, c. 8, not repealed as to them.**

Chapter 8, Laws 1891, as amended by chapter 180, Laws 1901, provided for the taxation of both telegraph and telephone companies as a system. Chapter 314, Laws 1897, provided for taxation upon the gross earning of all telephone companies.  The provision in the last-named law repealing all acts inconsistent with the provisions thereof was intended, and is construed, to be limited to the repeal of chapter 8, Laws 1891, only so far as it applied to the telephone companies.

[1]Reported in 124 N. W. 380; 126 N. W. 403.
[2]April, 1909, term calendar.                    [3]April, 1910, term calendar.

---

[Note]  Taxation of capital stock of corporations, see note to State Board of Equalization v. People ex rel. Goggin (Ill.) 58 L. R. A. 513.

**Laws 1897, c. 314, valid — no discrimination.**

The law taxing the gross earnings of telephone companies is not void as discriminating in favor of such companies and against telegraph companies.

**Laws 1891, c. 8, valid — due process of law.**

The law for taxation of telegraph companies provides for the collection of taxes by judicial action, and is not void because it fails to afford the equal protection of the laws or to constitute due process of law.

**Action to recover taxes — when overvaluation is a defense.**

While not every well-grounded claim of overvaluation is a valid defense in a judicial proceeding to collect a tax, yet overvaluation may be so excessive as to avail as a defense, at least pro tanto.

**Same — valuation — evidence.**

The prima facie inference as to the correctness of the valuation placed on defendant's property was not overcome by defendant's testimony.

(a) The cost of reproduction of the property with allowance for deterioration did not, under the circumstances here presented, constitute a final or an exclusive standard for the valuation of the property assessed. The true rule is that every fact or circumstance brought to the attention of the board charged with the duty of fixing the taxable value, and which in itself naturally bears on the question, should be considered.

(b) A criterion which is the result of a limited examination, made at an indefinite previous time at an undisclosed place, not in Minnesota, and under conditions not revealed, is not binding on the board of equalization.

(c) Defendant's valuation was not controlling because of the testimony of defendant's own witnesses that its appraisal was for less than the full value of the property which is recognized as assessable.

(d) Figures furnished by defendant itself tended to justify the valuation placed on defendant's property by the state.

**Evidence — objections.**

Objections to rulings on evidence by the trial court are *held* to be without such merit as would warrant reversal.

**Delinquent taxes — interest.**

Chapter 82, Laws 1907, which provides for interest at twelve per cent. per annum on taxes remaining unpaid for a period of thirty days, is purely prospective in operation, and does not apply to the taxes involved in this action. [Reversed after reargument. Reporter.]

May 13, 1910.

After Reargument.

**Same.**

As the state may, in the first instance, enact that taxes shall bear interest

from the time they become due, so, without conflicting with any provision of the federal constitution, it may in like manner provide that taxes which have already become delinquent shall bear interest from the time the delinquency commenced. This is adding no novel or extraordinary penalty for interest, and is the ordinary incident to the nonpayment of obligation. League v. Texas, 184 U. S. 156, followed and applied.

Actions in the district court for Ramsey county under Laws 1891, p. 70, c. 8, to enforce the payment of unpaid balances of the taxes levied by the state board of equalization for each year from 1901 to 1905, both inclusive, upon defendant.for its lines and equipment within the state of Minnesota. The actions were consolidated during the trial thereof by stipulation. The total balance claimed by the state was $40,564.07.

The answer alleged the act of congress of July 24, 1866, "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military and other purposes" (14 St. c. 230) and the amendments thereto (R. S. §§ 5263–5269); the acceptance of the terms of that act by the defendant, by which it became entitled to all the rights and privileges thereof; that all of its lines in Minnesota had been constructed and operated upon the military and post roads of the United States and upon the public domain; that thereby defendant in the use of its lines became and was an instrument of interstate commerce, and engaged as an agency of the United States government in the transmission of telegrams between the several departments of the government of the United States and their agents and officers for military, postal and other purposes of said government. It also alleged that the valuation of one million dollars made by the state board of equalization was a grossly excessive valuation and, in fact, included a valuation of franchises and property owned and used by defendant outside of Minnesota, and in consequence said valuation was null and void; that the value of its lines and property in the state of Minnesota was not more than $600,000. It also alleged and claimed immunity under section 8 of article 1 of the federal constitution from taxation directly or indirectly by the state of Minnesota on account of any

receipts from its business, or on account of any property within the state of Minnesota, arising from the carrying on of interstate business or commerce by defendant, or because its property in Minnesota was used in carrying on interstate commerce, and claimed immunity by reason of said constitutional provision and of the federal statutes, particularly the act of congress before mentioned; that the franchises, rights and privileges granted by that act and its amendments, and employed by defendant, were not either directly or indirectly taxable by the state of Minnesota, and that no part of its property outside of Minnesota was either directly or indirectly taxable by the state. The answer also alleged that the enforcement of Laws 1891, c. 8, as amended by Laws 1901, c. 180, by a judgment against defendant in these actions would deprive it of its property without due process of law, would be a regulation both directly and indirectly by the state of Minnesota of interstate commerce and the taxation of franchises, rights and privileges belonging to, and enjoyed by, defendant by virtue of the federal constitution and statutes; and that said statute of Minnesota, as so construed, would be repugnant to section 8 of article 1 of the federal constitution and section 1 of amendment 14 and said laws of the United States.

The case was tried before Hallam, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From the judgment entered pursuant to the order, defendant appealed. Modified.

*C. M. Ferguson* and *Brown, Albert & Guesmer,* for appellant.

The tax system discriminates in favor of telephone companies and against telegraph companies, and is therefore invalid, at least to the extent of the excess here claimed by defendant. Laws 1897, c. 314, enacted a new rule on the basis of gross earnings for telephone companies and repealed the entire act in which the taxation of telephone companies was before provided. Laws 1891, c. 8 (G. S. 1894, §§ 1682–1687) placed telephone and telegraph companies in the same class. Laws 1897, c. 314, was inconsistent with the entire act. The former act was therefore by the express terms of the act of

1897 repealed, including the provisions as to telegraph companies. U. S. v. Fisher, 2 Cranch, 358, 399; U. S. v. Wiltberger, 5 Wheat. 76; Lake County v. Rollins, 130 U. S. 662, 670; Thornley v. U. S., 113 U. S. 310. The basis used by the state board in these years .was under a repealed statute and under an illegal principle, and made a discrimination between companies of the same class. As defendant's return for the taxes of 1905 was made under R. L. 1905, §§ 1031–1037, the discrimination complained of applies to the taxes for 1905 on different grounds than for the years 1901 to 1904, inclusive, and the attempted answer of the trial court to this proposition of appellant cannot in any event apply to the taxes of 1905. The distinction made by the statute is unconstitutional and prejudicial to defendant to just the excess contested in these proceedings.

*George T. Simpson,* Attorney General, *George W. Peterson,* Assistant Attorney General, *Royal A. Stone* and *Charles W. Somerby,* for the State.

JAGGARD, J.

The state of Minnesota, plaintiff and respondent, brought an action against the defendant and appellant under chapter 8, p. 70, Laws 1891, as amended by chapter 180, p. 251, Laws 1901, to enforce taxes for the years 1901–1904. A second action was brought under the same statute to recover taxes for 1905. By stipulation, both actions were tried together. The assessment made by the board of equalization for each of the five years in question was approximately one million dollars. Statements had been made by defendant as required by the statute concerning the extent of lines, poles and instruments and duly filed each year. Warrants were drawn for the payment of the full amount of taxes each year. They were only partially paid by defendant on the ground that the assessment in each year was excessive and illegal, and that the fair cash value of the property assessed was about $600,000. Judgment was entered for plaintiff against defendant for the sum of $49,047.63. From that judgment this appeal was taken.

1. Chapter 8, p. 70, Laws 1891, provided for the taxation of telegraph and telephone companies as a system. The validity of the law

was sustained in State v. Western Union Tel. Co., 96 Minn. 13, 15, 104 N. W. 567. Section 5 of this law was amended by chapter 180, · p. 251, Laws 1901, the only effect of which was to change this particular section. Chapter 314, p. 581, Laws 1897, was entitled "An act to provide for the imposition and collection of a proportionate earnings tax upon the gross earnings of all property within the state of Minnesota of all telephone companies or owners whose lines are in or extend into or through said state, in lieu of other taxes." That law contained this proviso: "All acts inconsistent with the provisions hereof are hereby repealed."

Defendant's contention is: This, expressly, not impliedly, repealed the law of 1891. "Where the meaning of a statute is plain, it is the duty of the courts to enforce it according to its obvious terms. In such case there is no necessity for construction." Thornley v. U. S., 113 U. S. 310, 313, 5 Sup. Ct. 491, 28 L. Ed. 999. And see Doe v. Considine, 6 Wall. 458, 479, 18 L. Ed. 869; Gibbons v. Ogden, 9 Wheat. 1, 188, 6 L. Ed. 23; City of Beardstown v. City of Virginia, 76 Ill. 34, 40; Hills v. City of Chicago, 60 Ill. 86, 90, 91; Market Co. v. Hoffman, 101 U. S. 112, 115, 25 L. Ed. 782; Crozer v. People, 206 Ill. 464, 69 N. E. 489, 491; Porteet v. People, 65 Ill. 230, 233; Newell v. People,.7 N. Y. 9, 98. The act of 1897 expressly and clearly repealed the law of 1891. There is no reason or justification for so misconstruing these plain words of repeal as to permit it to survive in part or in whole.

This argument of defendant we have not been able to regard as sound. The title of the act of 1897 previously quoted did not purport to relate to the taxation of telegraph companies. It was not broad enough to cover that subject. The construction for which defendant contends would render it unconstitutional. It is elementary that laws must be construed so as to effectuate legislative intention. This court has done this with respect to this law, and it previously sustained the act of 1897 as applicable to telephone companies only, and the law of 1891 as applicable in 1900 to telegraph companies only. Compare State v. Western Union Tel. Co., supra,. with State v. Northwestern Tel. Exch. Co., 107 Minn. 390, 120 N. W. 534. It was the obvious intention of the legislature to tax the telephone

companies on their gross earnings and to leave telegraph companies taxed as they had been on their valuation as a whole. This natural construction was evidently in the minds of the legislature when in 1901 it amended a section of the law of 1891, which it treated as then existing despite the passage of the law of 1897. State taxing officials and this defendant itself have so practically construed the law. This accords with the principle that: "A subsequent act of parliament will * * * control the provisions of a prior statute, if it were intended to have that operation; * * * that where the intention of the legislature was apparent that the subsequent act should not have such an operation, there, even though the words of such statute, taken strictly and grammatically, would repeal a former act * * * [it will] not receive such a construction." Per Lord Kenyon, Williams v. Pritchard, 4 T. R. 2, approved in Mongeon v. People, 55 N. Y. 613, at page 617.

In State v. Moorhouse, 5 N. D. 406, 67 N. W. 141, the court was called upon to construe a provision in a taxing law similar to the one at bar. In that case Mr. Justice Corliss said: "It is obvious that the broad letter of this repealing act is in conflict with the whole spirit and purpose of the revenue law passed at the same time. As both cannot stand, it is obvious that we must give effect to that which expresses the true legislative purpose. * * * To give effect to that purpose we must limit the broad language of the repealing act so that it will not defeat such purpose." The facts in that case have especial significance here. We conclude that the absolute repeal must be construed as a qualified or partial repeal where, as here, the statute construed as a whole shows such to have been the real intent. 1 Lewis, Sutherland, St. Const. 521, and see Home v. Nolan, 21 Mont. 205, 53 Pac. 738. In re Rochester Water Commissioners, 66 N. Y. 413, and see page 422.

2. The defendant further contends that, if these two laws be construed as being both in force as hereinbefore set forth, the taxation of telegraph companies as a system is void because it discriminates in favor of telephone companies and is therefore void at least to the extent of the excess claimed. We are at a loss to see how this view can be logically sustained. It is practically conceded that each law

was valid by itself.   Defendant has failed to show why the later, and not the earlier, legislation should be invalidated.   The courts have recognized the right of the state legislature to determine for itself within wide limits matters of taxation pertaining to the classification of property and corporations and the methods of fixing their respective contributions to the public treasury.

On the one hand the propriety of taxing telegraph companies as a system is obvious.   Such companies, the court judicially knows, are few in number and are engaged in interstate communication. They possess a taxable value derived from a combination of tangible and intangible property "united in use."   The state has a right to tax a proper portion of that value, and has so undertaken to do.

On the other hand, the appliances, locations and methods involved in telephone communication are substantially different.   Especially are the corporate organizations dissimilar. . It is true that at least two of such organizations have operated between states and are in active competition with telegraph companies, which they closely resemble.   But there are also in existence, and coming into existence, many smaller local companies which operate entirely within the state and often within a very small portion of the state.   Their facilities are limited, and their business essentially mutual.   They are legitimate subjects of taxation.   To apply to them the provisions which would be economically admirable in the case of transcontinental telegraph companies would be mistaken and futile.   The taxation of their gross earnings is an obviously advantageous method of compelling their fair contribution to the public treasury.   It would be difficult to perceive that there is not a greater difference between telephone companies and telegraph companies than between, for example, surface street railways and underground street railways. Yet such a distinction has been recognized.   People v. New York, 199 U. S. 10, 25 Sup. Ct. 705, 50 L. Ed. 65.   Cf. Savannah v. Savannah, 198 U. S. 392, 25 Sup. Ct. 690, 49 L. Ed. 1097.

3. Defendant's next insistence is that "if the system of taxation as provided by the Minnesota statutes for telegraph companies— sections 1031–1034—shall be construed (and as so construed applied to the years 1901 to 1905), so that it allows the state board to

include arbitrarily or by a guess any or all intangible values, and that in proceedings like these the assessment of the board can be attacked only on the ground of bad faith or fraud, then such system of taxation lacks the necessary elements of due process of law and the equal protection of the laws guaranteed by section 1 of the fourteenth amendment of the federal constitution. The point here made involves the several elements of unconstitutionality. One set of these elements refers more particularly to the lack of notice which is requisite under the principles of due process of law as well as a discrimination in the provisions for notice as between one class of business and another, contrary to the requirement of an equal protection under the law. Another set of these unconstitutional elements lies in the lack of opportunity to be heard, as such hearings must be provided in order to constitute due process of law." This, we think, is the substance of defendant's position on this point. Defendant is entitled to have it set forth that the validity of the law under the provisions of the federal constitution was fairly assailed.

With respect to the notice and lack of opportunity to be heard, we think the law is clear and simple and entirely adequate. The defendant had notice of the time of meeting of the state board of equalization prescribed by statute. This could not conflict with the constitutional requirement. Backus v. Fort St. Union Depot Co., 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853. Cf. English v. Territory of Arizona, 214 U. S. 359, 29 Sup. Ct. 658, 53 L. Ed. 1030. He was not of right entitled to be present when the tax was assessed. McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335. The tax was collected by action in which both notice of judicial hearing and opportunity to interpose any defense available to defendant was afforded. See Winona & St. Peter Land Co. v. State, 159 U. S. 526, 16 Sup. Ct. 83, 40 L. Ed. 247. Central of Georgia Ry. Co. v. Wright, 207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 134, is entirely consistent.

The court there held that the assessment of a tax is judicial in its nature in so far as is required for the legal assertion of a power subject to an opportunity to appear as the circumstances of the case require. It did not hold that the power of taxation was judicial in

its conventional sense; that judges should become assessors and do the work of assessors personally or by master for which they are neither qualified nor provided with facilities; that the functions of executive and ministerial officers were not changed so far as to be made merely advisory; or that it repealed the elementary rule that the power of taxation is not generally judicial in nature. In the present case and in the case reported in 96 Minn. 13, 104 N. W. 567, the state proceeded by action. It is true that under section 1034 the state might have proceeded by distraint. The validity of that provision is not material. If it be assumed that it was invalid, then it would have been entirely proper to have proceeded, as the state did here, by action. Such proceedings constitute due process of law—of course.

The established doctrine of this court is that, while not every well grounded claim of over-valuation (Cf. Maish v. Arizona, 164 U. S. 599, 17 Sup. Ct. 193, 41 L. Ed. 567) is a valid defense in a judicial proceeding to collect a tax, yet overvaluation may be so excessive as to avail as a defense at least pro tanto. See for example: County of Otter Tail v. Batchelder, 47 Minn. 512, 50 N. W. 536; State v. London & Northwest Am. Mort. Co., 80 Minn. 277, 83 N. W. 339. The exact line of demarcation or an accurate definition of what is such an excessive valuation to so constitute a defense is not before us for determination, for all that is here necessary to determine and all that is here decided is that the warrant created a prima facie case of correct valuation which was rebuttable by proof of sufficient overvaluation, and that defendant has failed to show a substantial overvaluation or, indeed, a well-grounded claim of overvaluation.

4. The assessment actually made presents a valuation of substantially a million dollars on defendant's property for each year involved. Defendant, however, insists that the testimony, taken as a whole, demonstrated that this valuation was unreasonably excessive, and that the actual value did not in fact exceed in amount from $450,000 to $600,000. The criterion of value adopted by those witnesses was the cost less deterioration. For example, one witness testified that the cost of reproduction of the property for 1903 including installation would have been $979,673.70. "Our experience·

has shown that an allowance of five per cent. per annum for depreciation is a fair allowance on telegraph property; also, that for property like that in Minnesota the average existing age of the lines would be about eight years. Therefore, multiplying that five per cent. per annum for depreciation by eight you have forty per cent., or $391,864, to be deducted from the value of a new plant in order to make the value of the existing plant exact. That would leave for the year 1903 the value of the plant, as it stood after making this fair allowance for depreciation, $587,809."

For four reasons, each of which is sufficient, we regard this testimony as inconclusive.

In the first place, the cost of replacing property with allowances for deterioration, with that cost and that deterioration accurately determined, is neither the final nor the exclusive standard of the valuation of property for taxation. Atchison, Topeka, & S. F. Ry. Co. v. Sullivan, 173 Fed. 456; Western Union Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49. Cf. State v. Western Union Tel. Co., 96 Minn. 15, 104 N. W. 567. The facts defendant established are entitled to consideration, but do not control. The true rule is that, in ascertaining the true value in money of property for purposes of taxation in the hands of its owner, every fact or circumstance, brought to the attention of the person, officer, or board charged with the duty of fixing that value, and which in its nature bears on the question, should be considered. Bradbury, C. J., in State v. Halliday, 61 Oh. St. 352, 56 N. E. 118, 49 L.R.A. 427. The board of equalization, for example, was entitled to consider the market value of defendant's property, not at a forced sale, nor at auction sale, but a fair sale by private contract. Hurd v. Cook, 60 N. J. L. 70, 36 Atl. 892. It was in particular entitled to consider what the property was worth for purposes of income. "That the income-producing capacity of an article is an important factor in determining its value is so obvious as to seem beyond the bounds of controversy," said Bradbury, C. J., in State v. Halliday, supra. And see Crescent v. Board, 51 La. An. 335, 25 South. 311. This principle has been repeatedly applied by the federal supreme court

to the defendant with its federal charter and with its right to operate its lines upon the public domain and along the post roads of the United States. See for example Western Union Tel. Co. v. At-. torney General, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; Western Union Tel. Co. v. Taggart, 163 U. S. 1, at page 22, 16 Sup. Ct. 1054, 41 L. Ed. 49, and Western Union Tel. Co. v. Missouri, 190 U. S. 412, at page 422, 23 Sup. Ct. 730, 47 L. Ed. 1116.

The practical significance of this proposition appears upon referring to defendant's omission to include in its estimates all its property which was assessable. It consistently but erroneously charged itself with nothing for intangible property to change the figures, the effect of which on income will be subsequently set forth, justifying an assessment at a considerable sum. Of course, the state was not bound by an opinion of defendant's experts that this property had no value. Nor did defendant list its rights to put its poles or conduits in the ground. That its privileges to maintain its lines pursuant to arrangements with railroads, with cities or with others were valuable and were legitimate subjects of taxation under the reiterated decision of the federal supreme court, it is idle to deny. If defendant's proof be conceded to have demonstrated the facts for which defendant contends, it does not justify its deduction that the valuation resulting was adequate or was binding on the board of equalization or upon the courts. No basis is afforded by the record for presuming that the board did not consider other elements or criteria of value, and that these did not justify its conclusions. The prima facie case made out by the introduction of the tax warrant was not destroyed by defendant's proof.

In the second place, defendant's calculations are based on a formula whose correctness has not been established. This is demonstrated by the witness' own statement of how this rule was derived. The witness had stated that the average age of lines in Minnesota was eight years. He was then asked how this result was reached. He replied: "By taking that as the result of a very close examination that was made some time ago in a case similar to this, and it was found as a general proposition that the average age—not the life— of a line in the system would show about eight years, allowing for

the period of reconstruction, varying according to the expired life of the different lines. We therefore apply the rate of depreciation of five per cent. per year to the expired eight years of the age of the lines to ascertain the difference between the cost of reproducing the lines new and their present value. You should understand that the reconstruction and the maintenance of our lines is practically our depreciation allowance." This experiment, however, was not made in Minnesota. Nor does it appear where it was made. The result, however, was applied to the Minnesota portion of the system "because we found by selection from the various parts of the system that that was a fair calculation and have applied it to the Minnesota lines on general principles. That would be the only way in which it could be done."

It is evident that the observation upon which the rule was based was exceedingly limited; that the time when experience was consulted was in an indefinite past; that the place and conditions generally of the experiment were unrevealed. One fact in particular necessitates a valuation of the estimate of deterioration, namely, the extent to which new lines have been built and repairs made. There is no reference whatever to the relative number of new lines in Minnesota during this testing period and in the place where the experiment was performed. This increase, as will hereafter appear, was material.

It also affirmatively appears that with advancing years the standard of maintenance of the plant was improved. The report of the president for 1906 says: "The large increase in the revenues for the year has warranted a continuance of the policy of making liberal appropriations from earnings for raising the standard and improving the stability and operating efficiency of the lines, by adding to the number of poles per mile on trunk lines, replacing small poles with larger ones, substituting copper for iron wire in reconstruction work, and renewing insulation and cross-arms, thus increasing the reliability of the service and developing the traffic, which shows an increase of over four million in the number of messages transmitted during the year. The expenditures for these purposes and for the general maintenance and repair of the lines during the year amounted

111 M.—3.

to $4,422,959.70, an increase of $703,626.06 over last year. A large part of this amount was devoted to the betterment of the property, and might with propriety be charged to capital account, but has been charged to maintenance and reconstruction, in pursuance of the conservative policy of paying for betterments out of earnings, instead of capitalizing them." It also appeared that the deterioration was more pronounced in large manufacturing districts than in an open country like Minnesota. Accordingly, it is as reasonable to regard the deduction from the experience as having resulted in an empiricism useful in defendant's own commercial calculations for its own purposes; as it would be unreasonable to regard it as establishing any certain criterion for the determination of value for a certain period for purposes of taxation.

In the third place, defendant's valuation was not controlling because of the testimony of its own witness that its appraisal was for less than the full value of its property as the law required. This consideration as appears in the testimony of some of defendant's principal witnesses, is the estimate of value on which defendant founds its claim of which the following is an illustration: "Q. What has been your idea in making out those statements [referring to the statements of property returned to the state auditor]? To give the actual full value in the state, or to give the value as you thought it ought to be, for the purpose of taxation? A. For the purpose of taxation. Q. And in that respect you have assumed that it ought to be taxed on about fifty per cent. basis, have you not; about that proportion? A. What is that? Q. The valuation you gave is about fifty per cent. of the full value. That is true, is it not? A. Yes." Undoubtedly, the whole of the testimony on this point, not all of which is favorable to the state, must be considered together. But, as so construed, the board and the trial court were entitled to conclude that it substantially tended to destroy the foundations of defendant's case.

In the fourth place, the figures which defendant itself has supplied, tend to justify the valuation of about a million dollars, placed by the board in a legal sense upon defendant's taxable property and sustained by the trial court, although they may not demonstrate in-

fallible judgment.   The trial court most significantly pointed out that, "taking the figures as given, it appears that for two of the five years in question the net return is nearly ten per cent. upon $1,000,000, and that the average net return for the five years is nearly seven per cent. of that amount, with all expenses of maintenance and reconstruction paid out of earnings and with the property maintained at the highest practicable point of efficiency, without depreciation."   The state has sought to convince us, by calculations based on the records, that the prima facie value of the physical property of defendant was more than a million dollars.   These figures may not have properly considered the deterioration of property, but defendant has not conclusively shown us what that deterioration was.   It would not, however, serve any useful purpose to here consider these calculations to determine the true significance of defendant's own statements, nor to discuss the effect of a former adjudication of this court that in the year 1900 the valuation was at least one million dollars.   See State v. Western Union Tel. Co., 96 Minn. 13, 104 N. W. 567.   Nor is it desirable to do more than call attention to the fact that defendant's own figures furnished by it indicate an increase in mileage of 1,288 miles in 1901 over the mileage of 1900 and a continued increase until 1905 of 5,851 miles or more than one-fourth more than the mileage reported by defendant to the board in 1900.   We think it is clear that defendant has not successfully refuted the prima facie case of fair valuation by the state.

5.  A number of assignments of error are addressed to rulings of the trial court on evidence.   All have been examined.   None have been found to be of sufficient merit to constitute reversible error or to justify an enlarged statement.

6.  Chapter 82, p. 98, Laws 1907, did not apply to the case at bar.[4] That law provided that, whenever any tax remained unpaid for a period of thirty days, it should draw interest at twelve per cent. per annum from the expiration of that period; and that all sums due the state as taxes remaining unpaid for thirty days after the passage should draw interest accordingly.   The state at the time of the approval of this act had instituted this suit; expenses had then been incurred.   The relief sought thereon, of course, did not include the

4 See opinion after reargument, infra, page 36.

interest. The subsequent charge of interest was a substantial altera-
tion in the subject-matter of the action. It is entirely true that
there was no contract between the state and the defendant. But a
right to recover a money judgment existed. It was competent with-
out doubt for the state to have changed its remedy in the enforce-
ment of that right, but not to have increased the amount for which
it sought recovery. It is no answer to these considerations to say
that such a rule discriminates between a case where action had been
begun and where it had not. It may be that as to defendants against
whom no action had been begun the rule would be the same. That
case is not, however, before us. All that is here decided is the ques-
tion which the record presents. The natural construction of the act
is to give a purely prospective effect. As so viewed the act is not
unconstitutional.

The judgment entered must be affirmed, except in so far as it
included the allowance of interest under the act of 1907. The
judgment should be modified accordingly.

Modified.

O'BRIEN, J., took no part.

The state's petition for a reargument of the question whether it
was not entitled to recover interest having been granted, on May 13,
1910, the following opinion was filed:

JAGGARD, J.

On reargument the state insisted that the original opinion in this
case by this court was in error in holding that chapter 82 of the
Laws of 1907[1] did not constitutionally apply to the case at bar. On
the original argument the state referred us to no authorities whatever.
On reargument our attention was called for the first time to the deci-
sions hereinafter referred to.

In Western Union v. State, 146 Ind. 54, 44 N. E. 793, and West-
ern Union Tel. Co. v. Indiana, 165 U. S. 304, 17 Sup. Ct. 345, 41
L. Ed. 725, it does not appear that the taxes had not been assessed
and did not become delinquent until after the passage of the statute

[1] R. L. Supp. 1909, §§ 976-1 to 976-3.

providing for their assessment and collection. We are at a loss to see how the law there laid down is applicable here.

So the facts in League v. Texas, 184 U. S. 156, 22 Sup. Ct. 475, 46 L. Ed. 478, tend to differentiate it from the case at bar. There the new law was enacted in 1897. In 1884 the land had become forfeited to the state for taxes. The forfeiture became absolute in 1886. The only principle that was necessarily involved in the decision accordingly was that the state had waived its right of forfeiture on condition that taxes, with interest, should be enforced against the land. The land having become the property of the state, the state might have prescribed the terms for sale or for redemption. And in prescribing the terms for redemption it could, of course, have determined upon any rate of interest. In the actual decision of the case, however, Mr. Justice Brewer did not rest the decision on this ground, but on another and different one, namely: "As the state may, in the first instance, enact that taxes shall bear interest from the time they become due, so, without conflicting with any provision of the federal constitution, it may in like manner provide that taxes which have become delinquent shall bear interest from the time the delinquency commenced. This is adding no novel or extraordinary penalty, for interest is the ordinary incident to the nonpayment of obligations."

In Webster v. Auditor General, 121 Mich. 668, 80 N. W. 705, an amendment to the tax law of 1893 by the act of 1899 was sustained. That amendment changed the rate of interest payable on delinquent taxes from eight per cent. per annum to one per cent. per month, and increased the charge for advertising from seventy cents to one dollar. It was held that this law applied to all taxes delinquent at the time of such enactment, that the property owner who owed delinquent taxes had no vested right to have the rate of interest thereon remain unchanged, and that the law was constitutional. The court, by Moore, J., said, at page 674 of 121 Mich., and page 707 of 80 N. W.: "It is the duty of the landowner to pay his taxes, and to pay them when they become due. Incidental to the power to tax is the power to enforce payment. Because the state has been liberal in making provision for the redemption of the lands from the lien created by

the tax, it does not follow it cannot change the terms upon which the lands can be redeemed. See Muirhead v. Sands, 111 Mich. 487 [69 N. W. 826]. We do not think it can be longer said in this state that the taxpayer has a vested right to have the interest charged in order to redeem [the remainder] at the same rate it was when the land was assessed, so long as he chooses to be delinquent in the payment of his taxes. It is, as we have shown, within the power of the legislature to change the rate of interest due from the relator and all others in his position." To the same effect, see Dunne v. Mastick, 50 Cal. 244. Flock v. Smith, 65 N. J. L. 224, 47 Atl. 442, is not much in point.

That under these authorities the former holding of this court must be reversed is clear, unless sufficient basis for differentiation is afforded by the fact that the case at bar is peculiar, because in the cases cited no ' proceedings for the enforcement or collection of taxes had been initiated and were pending at the time of the passage of the law imposing the interest. In the instant case, such proceedings were pending when the act imposing interest was enacted. It is to be noted, however, that chapter 82 of the Laws of 1907 applied only to sums due the state as taxes which remained unpaid for a period of thirty days, and which remained unpaid for thirty days after the passage of the act. In other words, the defendant had an opportunity for thirty days after the passage of the act in which to pay the delinquent taxes, and to thus avoid the payment of any interest. Under these conditions we are unable to perceive that the general rule as laid down by the authorities stated does not govern this case.

The rate of twelve per cent. per annum was not unreasonable or excessive. It is the current rate of interest which ordinary real estate taxes bear after sale, in addition to a fifteen per cent. penalty imposed on nonpayment.

Accordingly the previous judgment entered herein is modified, in so far as it excludes the allowance of interest under the act of 1907.

O'BRIEN, J., took no part.