## STATE v. MINNESOTA & ONTARIO PAPER COMPANY.[1]

### December 17, 1920.

### No. 21,970.

**Trial—presumption as to basis for findings of fact.**

1. Trial courts are presumed to make findings of fact solely from a consideration of the evidence, uninfluenced by the legal conclusions which may be drawn from the findings.

**Taxation—finding of value of personal property unaffected by conclusion of law.**

2. In a proceeding to enforce payment of delinquent taxes on personal property, the court found that the assessed value was the true value of the property; that the assessment was based on values shown by a list returned to the assessor by an authorized agent of the taxpayer,

[1]Reported in 180 N. W. 548.

147 M.—24.

and that timely application had not been made to the local boards of equalization or to the tax commission for a review and correction of the assessment. Because of the two last mentioned facts, the court concluded that the taxpayer was estopped from questioning the amount of the assessment. *Held*, that whether the conclusion was right or wrong, the specific finding of the value of the property remained unaffected.

**Delinquent tax list—burden of proving invalidity of tax on taxpayer.**

3. The delinquent tax list, filed with the clerk of the district court, was *prima facie* evidence that there had been a compliance with all the provisions of law relating to the assessment and levy of the taxes shown by the list, and the burden of proving the alleged invalidity of the tax rested on the taxpayer.

**Finding of value of property sustained by evidence.**

4. The evidence was sufficient to support the finding of the value of the property assessed.

In the matter of proceedings for enforcement of personal property taxes for the year 1918 in Koochiching county, the Minnesota & Ontario Paper Company filed its answer and prayed the court to review, correct, revise and abate its assessment, and if there was a valid tax levy or a valid assessment to determine the true and correct valuation of the property for such assessment purposes. The testimony was taken by a referee who reported the evidence to the court and the matter was argued before McClenahan, J., who made findings and ordered judgment as set forth in the second paragraph of the opinion. Defendant's motion for amended findings of fact and conclusions of law, was denied. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Harris Richardson,* for appellant.

*Franz Jevne, Frank Palmer* and *A. L. Thwing,* for respondent.

LEES, C.

Appellant owned and operated a paper mill at International Falls in this state. It failed to pay personal property taxes assessed against it for the year 1918. It answered in the proceeding to enforce payment of the delinquent taxes, attacking the assessment on the ground that such an excessive valuation had been placed on its pulpwood, pulp and

paper, as to indicate that there was a demonstrable mistake of fact amounting to fraud. It asked the court to review and correct the assessment and determine the true value of the property for assessment purposes. Testimony was taken by a referee and reported to the court, and the court made findings sustaining the tax. It denied a motion to amend the findings and a motion for a new trial, and this appeal followed.

The court found that in May, 1918, defendant made and delivered to the assessor a list of its personal property as prescribed by statute. It listed its pulpwood, pulp and paper at $325,500, other manufacturers' materials and manufactured articles at $24,000, and office furniture at $2,400. Thereafter the taxing officials duly determined the full and true value of such property to be $351,900, and its value for the purpose of taxation to be $117,300. On May 1, 1918, appellant owned in the state of Minnesota, and in the taxing district comprised of the city of International Falls, personal property in Class 3, as described in section 1988, G. S. 1913, which was assessable and taxable in said district, of the full and true value of $351,900 and of the taxable value of $117,300. Appellant did not apply to the local board of review or the county board of equalization for the review, correction or reduction of the assessment. On October 16, 1918, it did apply to the tax commission for a reduction of the assessment, on the ground that it was excessive because no allowance had been made for depreciation and shrinkage in the pulpwood, and for the additional reason that an error had been made respecting the quantity of pulp it had on May 1. The application was denied. On March 14, 1919, it applied to the county board for a favorable recommendation of its application to the commission for a reduction of the assessment. This application was also denied. Upon this state of facts the court concluded that the defenses and objections set forth in the answer were without merit, that the tax should be sustained, and "that defendant is estopped by the facts aforesaid and particularly by the facts found in paragraph 5 of the findings herein from attacking in this proceeding the amount of its said assessment."

Paragraph 5 relates to the applications to the county board and tax commission above set forth.

The greater portion of appellant's brief and oral argument is addressed to the proposition that a taxpayer who lists his property for assessment is not precluded from showing, in defense of proceedings to enforce the tax levied against such property, that his valuations were the result if a mistake and that the true values were less.

Respondent first contends that appellant could not question the amount of the assessment, for the reason that the valuations shown by the list are in the nature of conclusive admissions, and for the further reason that it failed to make timely application to the local and state boards for a reduction of the assessment. Its second contention is that, even if appellant may question the amount of its assessment, the tax must be sustained, because the district court found as a fact that the true value of the property was as stated in the list and that the evidence supports this finding. To meet the latter contention appellant argues that, having found the so-called estoppel, the court of necessity determined that the values listed were the true and full values of the property, because no finding to the contrary could be made consistently. If the evidence was sufficient to sustain the finding as to the true value of the property, that is the end of the case, unless there is merit in the contention that the finding was not based on a consideration of the evidence, but on the alleged estoppel. The estoppel is referred to only in the conclusions of law and is deduced from the findings of fact. The deduction may be erroneous, but, if so, 'it does not inevitably follow that the finding itself is destroyed.

In discussing the consequences of appellant's failure to apply to the several boards of review for a reduction of the asssessment, both parties comment on State v. Koochiching Realty Co. 146 Minn. 87, 177 N. W. 940, holding that a landowner may interpose the defense of an over-valuation in the assessment, although he neglected to apply for a correction to the board of equalization. In considering the effect to be given to the valuation appellant placed on its property when it listed it, both parties refer to State v. Wm. Deering & Co. 56 Minn. 24, 57 N. W. 313. Respondent regards the concluding portion of the opinion in that case with favor; appellant considers it mere dictum. We think that whether the court below was right or wrong in concluding that there was an es-

toppel on either ground considered in the two cases above cited, is a matter of no importance, if its finding as to value stands. We regard the vital question to be whether that finding is supported by the evidence. We do not regard the finding as one which resulted solely from the conclusion that appellant was precluded from questioning the assessment even if its property had been grossly overvalued. Facts are presumed to be found from a consideration of the evidence and nothing else. We have no right to disregard a specific finding on the theory that it originated in a preconceived opinion regarding the law, or to assume that facts were found which would square with the conclusions of law. St. Paul Trust Co. v. Kittson, 88 Minn. 38, 92 N. W. 500, goes directly to the point. There the finding was that the trust company charged an estate $6,000 for its services as executor and paid that sum to itself out of funds of the estate, and that the value of its services was $6,000 and no more. Then followed this statement:

"Save for an estoppel created by the foregoing facts, the evidence would justify and require a finding that the services * * * were worth the sum of $12,250."

It was held that the finding that the value of the services was but $6,000 was unequivocal and not of doubtful significance, and that, although the language quoted was inconsistent with the conclusion that the services were of no greater value, the specific finding as to their value was of controlling effect. The findings in the case at bar are even more unequivocal. The value of appellant's property is specifically found to be $351,900. Then follows a finding of mixed law and fact, viz.: That appellant is estopped from asserting that such was not the true value. These are two separate and distinct findings not inconsistent and not interdependent. The second may be erroneous, but so long as the first stands it does not affect the result.

This brings us to the question upon which the decision of the case finally depends. Was there sufficient evidence to support the finding as to value?

By section 2077, G. S. 1913, the delinquent tax list filed with the clerk of the district court is prima facie evidence that there has been a compliance with all the provisions of law in relation to the assessment

and levy of the taxes shown by the list. The burden of proof is on the taxpayer to show the invalidity of the tax. Section 1977, G. S. 1913; State v. Union Tank Line Co. 94 Minn. 320, 102 N. W. 721; State v. W. U. Tel. Co. 96 Minn. 13, 104 N. W. 567; State v. W. U. Tel. Co. 111 Minn. 21, 124 N. W. 380, 126 N. W. 403. The state did not rely wholly on the presumption in its favor, but produced in addition the following items of evidence: The list returned to the assessor, signed in appellant's behalf by one McLaren, its comptroller and chief accounting officer who was authorized to make the return, and in which he valued the property at $351,900, and several letters from McLaren to the assessor, indicating that the list had been prepared with deliberation, and was not merely a rough estimate of the quantity and character of the property listed or of its value.

To overcome the weight of the presumption, fortified as it was by the testimony referred to, appellant relied very largely upon the testimony of its president, E. W. Backus. It appeared that the pulpwood was in two huge stock piles, one in the mill yard and the other resting on the bed of the river. Owing to the great size of the yard pile, the age of some of the wood in it, the work of worms and the heating of the wood in the interior of the pile, there was considerable deterioration and a consequent shrinkage in the original value of the wood. One Fosse, appellant's timber superintendent, was consulted by McLaren when the list was made. Neither Fosse nor McLaren testified before the referee. Backus was absent from International Falls from November, 1917, until July, 1918. After his return in July, he seems to have found fault with the assessment. He testified that on May 1, 1918, there were 10,150 cords of spruce and 18,850 cords of balsam, poplar, birch, tamarack and other mixed woods in the yard stock pile; that the value of sound spruce was $6 a cord and of the other woods, if sound, $4.50 a cord; that there should be a deduction for depreciation of 30 per cent in the spruce and 66⅔ per cent in the other woods, leaving the net value of the spruce $4.20 a cord and of the other varieties of wood $1.50 a cord. The result was that he fixed the value of the pulpwood in the yard pile at $70,905. He testified that there were 20,500 cords of pulpwood in the river pile; that if this wood was sound it would be worth $6 a cord; that 25 per cent

should be allowed for depreciation, making the net value $4.50 a cord, or $92,250 for the river pile. McLaren had valued the pulpwood at $288,000. According to Backus' testimony it was worth only $163,155. There was no question about the value of the pulp, which was placed at $30 a ton. McLaren had assumed that there were 1,250 tons and entered the value on the list accordingly. Backus testified that after his return to International Falls the pulp was shipped out and it was then discovered that there were only 750 tons in the pile, making a difference of $15,000 in this item.

In weighing the evidence pro and con, the trial court may have been influenced by the fact that Backus' testimony consisted largely of estimates and conclusions, and that in making up the list McLaren had access to appellant's books and consulted its timber superintendent, and hence his figures were more apt to be accurate than those given by Backus. It is not easy to assume, in the absence of the testimony of McLaren and Fosse, that they made no allowance for deterioration in the quality of the pulpwood from causes which are well known to anyone at all familiar with the natural consequences of placing green wood in a great pile and leaving it there for a considerable time. Neither is it easy to understand how McLaren could have been so grossly mistaken about the quantity of pulp on hand on May 1. The familiar rule that findings are to be sustained, unless manifestly contrary to the evidence, is applicable in proceedings such as this. State v. Union Tank Line Co. supra. Applying the rule, we hold that the finding of value must be sustained.

The order appealed from must therefore be and it is hereby affirmed.